# UNITED STATES DISTRICT COURT
## District of Kansas

FILED
U.S. District Court
District of Kansas

MAY 1 3 2016

Clerk, U.S. District Court
By_____ Deputy Clerk

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.

CASE NO. 16-M-6059 -01- GEB

**RANDOM SHANE SMITH,**

**Defendant.**

# CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief.

## COUNT 1

Aggravated Sexual Abuse
18 USC 2241(a)

Between January 2014 and October 2015, at McConnell Air Force Base, a place within the special maritime and territorial jurisdiction of the United States and in the District of Kansas, the defendant,

### RANDOM SHANE SMITH,

knowingly caused MV1, a known female, to engage in a sexual act, by using force against MV1, in violation of Title 18, United States Code, Sections 2241(a).

## COUNT 2

Aggravated Sexual Abuse
18 USC 2241(a)

In January 2014 and continuing to October 2015, at McConnell Air Force Base, a place within the special maritime and territorial jurisdiction of the United States and in the District of Kansas, the defendant,

### RANDOM SHANE SMITH,

knowingly caused MV2, a known female, to engage in a sexual act, by using force against MV2, in violation of Title 18, United States Code, Sections 2241(a).

## COUNT 3

Production of Child Pornography
18 USC 2251(a)

In February 2014, at McConnell Air Force Base, a place within the special maritime and territorial jurisdiction of the United States and in the District of Kansas, the defendant,

### RANDOM SHANE SMITH,

knowingly used and coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and such visual depiction was produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, in violation of Title 18, United States Code, Sections 2251(a).

I, J. Reese Popst, further state that I am a Special Agent with the Federal Bureau of Investigation in Wichita, Kansas and that this Complaint is based upon the following facts:

**See attached affidavit which is incorporated herein by reference.**

Continued on the attached sheet and made a part hereof:

___X___ Yes _____ No

J. Reese Popst, Special Agent
FBI, Wichita, KS

Subscribed and sworn to before me this ___13th___ day of May, 2016, at Wichita,

Kansas.

Honorable Gwynne E. Birzer
U.S. Magistrate Judge
District of Kansas

Page 3 of 3

## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, J. Reese Popst, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

I am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I have been employed as a Special Agent since February 18, 2016. I am currently assigned to the Wichita, Kansas, Resident Agency, Kansas City Division. Prior to service with the FBI, I was a Certified Public Accountant working in public accounting specializing in financial audit. As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest, search, and seizure warrants under the authority of the United States. I have participated in a variety of criminal investigations, to include crimes against children, white collar crimes, and various non-violent Federal crimes.

I have probable cause believe that the following offenses against that laws of the United States of America have been committed and that **RANDOM SHANE SMITH** committed said offenses:

1)      Sexual abuse committed by force or threat, a violation of 18 U.S.C. § 2241(a);

2)      Production of child pornography, a violation of 18 U.S.C. § 2251; and

3)      Tampering with a witness or victim, a violation of 18 U.S.C. § 1512.

The information set forth below provides an overview of the investigation conducted to date. It does not include a listing of all investigative techniques employed or even the full and complete results of any of the listed investigative efforts. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint for **RANDOM SHANE SMITH**, I have not included each and every fact known to me concerning this investigation. I have set

forth only the facts that I believe are necessary to establish probable cause to arrest **RANDOM SHANE SMITH** of the violation of Title 18, United States Code, Sections 1512, 2241, 2251. After reading the reports and/or talking with people involved in the case, your Affiant states the following:

## **PROBABLE CAUSE**

1. In October of 2015, Minor Victim 1 (hereinafter, MV1), born in January 1998, reported to her mother that **RANDOM SHANE SMITH**, born in September 1979, had been sexually abusing her and her sister, Minor Victim 2 (MV2) repeatedly over the last six years. MV2 later confirmed MV1's disclosure.

2. Mother of MV1 and MV2 (VICTIMS' MOTHER) was a United States Army Sergeant stationed at McConnell Air Force Base (MCAFB), Wichita, Kansas, and living on-base in residential housing with MV1 and MV2.

3. Within 24 hours of the initial report, VICTIMS' MOTHER transported MV1 and MV2 to live with their maternal grandparents in Illinois. The minor victims' mother told the grandparents about the allegations, but advised she did not believe them because **SMITH** was impotent and unable to have intercourse. The mother of MV1 and MV2 did not report the sexual abuse allegations to law enforcement, either on-base or off-base.

4. While residing at the grandparents' residence, MV2 received intimidating email messages from **jones_shawn72@yahoo.com**. MV2 knew this email account to be a fictitious/alias account used by **SMITH**.

5. While residing at the grandparents' residence, both MV1 and MV2 disclosed details relating to their sexual abuse by **SMITH** to their grandparents.

6. On February 29, 2016, the grandparents reported the sexual abuse of MV1 and MV2 by **SMITH** to Mendota Police Department (MPD).

7. The grandmother reported that MV1 told her that the abuse began as inappropriate touching and petting by **SMITH**, beginning prior to July of 2009, when **SMITH** had access to MV1 in Maryland. The abuse has continued as the girls (and **SMITH**) have moved from Maryland, to North Carolina, to Kansas.

8. The grandmother reported that both girls told her that, since their arrival to MCAFB, **SMITH** has repeatedly subjected them to sexual intercourse.

9. The grandmother provided MPD with two emails that MV2 received on February 17, 2016 from **jones_shawn72@yahoo.com**. MV2 told the grandmother that **SMITH** told MV2, prior to her being taken to Illinois, that he would use a fake email address to communicate with MV2. These messages stated:

    a. "That's why u don't talk to me and what your slut ass was doing. Fucking around with some guy. God I hate you more than anything. Don't bother coming back I never want to see you or hear from you again. Hope you and ur sister both fucking die."

    b. "I fucking hate you more than anything just fucking die."

10. MPD officer Jason Stewart contacted Air Force Office of Special Investigations (AFOSI) at MCAFB to report the crimes, as the most recent sexual abuse occurred on-base at MCAFB.

11. On March 17, 2016, AFOSI Agents Jared Pingree and Antoniya Inness interviewed MV1 and MV2 in Illinois. Both MV1 and MV2 confirmed and provided additional details regarding **SMITH**'s sexual abuse of the minor victims at MCAFB as well as at other locations, including (but not limited to):

a. Both girls were afraid of **SMITH,** because of his strength, physical size and military training. A few times, **SMITH** pushed MV1 to the ground if she refused to comply with **SMITH**'s demands for MV1 to perform sexual acts on him.

b. For MV1, the sexual abuse began in Maryland in July 2009, where **SMITH** would kiss and lick MV1. Shortly thereafter, in August of 2009, **SMITH** began penetrative sexual acts upon MV1. At that time, MV1 would have been less than 12 years of age.

c. The sexual abuse continued when MV1 moved to Fort Bragg in North Carolina, where **SMITH** forced MV1 to perform sex acts on him. While on-base at Fort Bragg in North Carolina, **SMITH** subjected MV1 to penetrative sexual acts. At these times, MV1 would have been between 12 and 16 years of age.

d. When MV1 moved to MCAFB in January of 2014, **SMITH** continued to force MV1 to perform sex acts upon, or with, **SMITH.** MV1 would have been 16 years old at the time of the move to MCAFB in Kansas.

e. According to MV1, while at MCAFB, **SMITH** forced MV1 and MV2 to perform sex acts on him at the same time on multiple occasions. Further, **SMITH** used a bath robe belt to bind MV1's arms to the bed and use a sleeping mask to blind her face in **SMITH**'s room and perform penetrative sexual acts on her.

f. For MV1, **SMITH** would force sexual acts to be performed by MV1 at multiple locations in MV1's residence at MCAFB, including: a dark brown recliner in the living room, in the basement of the residence on a blanket (different blanket each occurrence), in **SMITH**'s bedroom on his bed, in MV1's bedroom on her bed, and in the spare bedroom on the bed.

g. For MV1, the sex acts perpetrated by **SMITH** while in Kansas occurred on-base at MCAFB, beginning on or about January 2014 and continuing on a 2-to-3-times-a-week basis until her disclosure in October 2015.

h. For MV2, in Maryland, she heard **SMITH** trying to persuade MV1 to perform oral sex on him, but did not confront **SMITH.**

i. For MV2, the sexual abuse of MV2 began later, in North Carolina, where **SMITH** would use his fingers to touch MV2's genitals while she slept. MV2 would have been between 12 and 16 years of age.

j. When MV2 moved to MCAFB in January of 2014, **SMITH** continued to sexually abuse MV2. MV2 would have been 16 years old at the time of the move to MCAFB in Kansas.

k. MV2 reported being forced to manually stimulate **SMITH**'s genitals in February 2014. MV2 reported being subjected to digital penetration repeatedly.

l.  MV2 reported being forced to perform oral sex beginning in April 2015. MV2 described **SMITH** forcing her to perform oral sex while holding and moving her head and subjecting MV2 to penetrative sexual acts. MV2 also reported **SMITH** forced MV1 and MV2 to perform sex acts on him at the same time on multiple occasions.

m.  For MV2, **SMITH** would force MV2 to engage with him in sexual acts in the dark brown recliner in the living room, in **SMITH**'s bedroom on his bed, and in MV2's bedroom on her bed.

n.  For MV2, the sex acts perpetrated by **SMITH** while in Kansas occurred on-base at MCAFB, beginning on or about January 2014 and continuing on an intermittent basis until her disclosure in October 2015.

12. During the interview by AFOSI, MV1 also disclosed that **SMITH** took nude pictures of her genitals, as well as pictures while he engaged in sexual acts with her. She reported he used his cell phone to do this, and that the pictures were taken on MCAFB in Wichita, Kansas, in approximately February of 2014.

13. During the interview by AFOSI, MV2 identified the email address **jones_shawn72@yahoo.com** as an email address used by **SMITH** to communicate with MV2 without other family members (her grandmother) being aware of the communication.

14. MV1 also stated **SMITH** created a fictitious online account to communicate with her sister, MV2, so that others would not know that **SMITH** was in contact with MV2. MV1 identified **SMITH** as using the fictitious account to discuss the sexual acts performed in the past with both minor victims.

15. On May 11, 2016, VICTIMS' MOTHER was interviewed by FBI Agent Popst and AFOSI Agent Pingree at the AFOSI office at MCAFB. She confirmed the presence of sex toys in the home located on MCAFB in Wichita, Kansas, and provided additional details regarding her and **SMITH**'s sex life, his purported impotence, and MV1 and MV2's disclosure of **SMITH**'s abuse, including (but not limited to):

    a.  **SMITH** was impotent due to muscle relaxers and pain medication he was taking due to an injury purportedly received during his service in the military.

    b.  **SMITH** utilized a penis pump for help maintaining sexual excitement with very little success.

    c.  **SMITH** was unwilling to see a medical doctor regarding his impotence.

    d.  Although **SMITH** uses muscle relaxers which make him unable to maintain sexual arousal, **SMITH** routinely goes to the gym to do weight training as he is a body builder.

16. On May 11, 2016, **SMITH** was interviewed by FBI Agent Popst and AFOSI Agent

Pingree at the AFOSI office at MCAFB. **SMITH** confirmed the presence of sex toys,

and provided additional details regarding his sex life and his purported impotence,

including (but not limited to):

    a.  He utilized a penis pump and a penis ring in the past to maintain sexual arousal with VICTIM'S MOTHER due to his impotence from taking muscle relaxers and pain medication.

    b.  He also used over the counter medications to help increase sexual excitement with little effect.

    c.  Since MV1 and MV2 moved away from MCAFB in October 2015, his sex life with VICTIM's MOTHER has increased in frequency to approximately once a week.

    d.  He described his sex life with VICTIMS' MOTHER as "gets the job done."

    e.  When asked where he had sex in the house (where MV1 and MV2 had resided), SUBJECT declared the master bedroom was the only location within the home he ever had sex.

    f.  When challenged with information that bodily fluids had been located elsewhere, he then declared he and VICTIMS' MOTHER had sex in a reclining chair in the living room once. Further, he claimed he masturbated in his reclining chair in the living room and in the bathroom, but that was all.

    g.  Later in the conversation, when he was challenged with information that bodily fluids had been located on the mattresses in the room belonging to MV1 and MV2, **SMITH** stated he became lonely when MV1 and MV2 moved away from Wichita, Kansas, and would watch pornographic movies and masturbate while

sitting on MV1 and MV2's beds.

 h. Later, when challenged with information regarding bodily fluid found on clothing owned by MV1 and MV2, **SMITH** stated he used the clothing to clean up after himself subsequent to masturbating on their beds.

17. **SMITH**'s statements indicate his belief that his seminal fluid should be found in several locations that had been previously described by MV1 and MV2 as locations where **SMITH** sexually abused them.

18. Pursuant to search warrant on May 11, 2016, law enforcement located and seized sex toys and implements from the home on MCAFB. These sex toys and implements were similar to those previously described by MV1 and MV2.

## CONCLUSION

19. In this case, certain criminal acts occurred on McConnell Air Force Base (namely, violations of 18 U.S.C. §§ 2241(a) and 2251). McConnell Air Force Base (MCAFB) is a United States military base located in Wichita, Kansas. The base includes residential housing for military personnel and their families.

20. Pursuant to 18 U.S.C. 7(3), this Court has jurisdiction over the offenses (listed in the preceding subparagraph) that occurred on MCAFB, including within the residential housing, as such is part of the territorial jurisdiction of the United States.

21. Pursuant to 18 U.S.C. 1512(i), this Court has jurisdiction over the § 1512 offense(s), as such conduct was intended to affect an official proceeding in this district.

22. Based on the above information, your Affiant asserts there is probable cause to believe that **RANDOM SHANE SMITH**, engaged in aggravated sexual abuse, a violation of 18 U.S.C. § 2241(a), the production of child pornography, a violation

of 18 U.S.C. § 2251, and tampering with a witness or victim, a violation of 18 U.S.C. § 1512.

J. Reese Popst, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me in my presence on this 13th day of May, 2016.

Honorable Gwynne E. Birzer
United States Magistrate