IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.     CASE NO. 16-CR-10075-01-JTM

RANDOM SHANE SMITH,

      Defendant.

**UNITED STATES' RESPONSE TO MOTION TO SUPPRESS AND REQUEST FOR *FRANKS* HEARING (DOC. 38)**

The defendant attacks the search warrant on multiple fronts: 1) claiming the warrant lacked particularity; 2) complaining the affidavit did not establish probable cause to search the defendant's home for evidence of witness tampering or the production of child pornography; and 3) requesting a *Franks* hearing based on allegations of false statements and omissions. The defendant's motion should be denied on all grounds.

**I.     Factual Recitation**

The defendant provides a lengthy recitation of the facts for the purpose of highlighting K.W.'s disbelief of MV1 and MV2 (Doc. 39, pages 3-4), to recast the interviews of MV1 and MV2 as merely "having sex" (Doc. 39, pages 4-6)[1], and to substantially minimize the defendant's interview. To the extent the defendant's recitation is designed to preemptively suggest that MV1 and MV2 were poor historians, it should be noted the defendant made certain admissions during his interview with SA J. Reese Popst that indicate that MV1 and MV2 were either accurate historians or extremely good prognosticators.

---

1 He goes as far to assert "the relationship with Mr. Smith was a 'boyfriend dynamic.'" Doc. 39, p. 13.

1

In his interview, after emphatically denying his semen would be found anywhere other than in his own bedroom, the defendant was questioned specifically snd sequentially about several of locations in the home (ones that MV1 and MV2 identified as places where sexual abuse occurred). After admitting to one location where his semen should/could/would be found, the defendant would say, to the effect, "That's the only other place, there are no others." Then, when asked about another location (identified by MV1 or MV2), the defendant would admit that his semen should/could/would be found in this additional location. Through this process of incremental admission, the defendant admitted his sexual deposits would be found in several (if not all) of the locations which MV1 and MV2 had described to law enforcement. Most notably, the defendant admitted his semen would be found in their beds and on their clothes. To explain his contributions, he claimed that, after the girls were removed from the home  (after they disclosed to their mother and him), he missed them... so he masturbated on their beds (plural).

Like the defendant's factual recitation, the above is not particularly germane to the Court's consideration of the issues presented in the defendant's motion, except to reorient the Court to the nature and quality of MV1 and MV2's report. The above facts also reveal that the defendant's motion and memorandum are designed to lead the Court to a particular conclusion, despite facts that affirmatively contradict the underpinnings of the defendant's thesis. As in the defendant's factual recitation, additional inaccuracies in the law and facts appear throughout his motion , which the United States will attempt to reveal.

## II.     Particularity

Under the Fourth Amendment, a search warrant must describe the items to be seized with sufficient particularity to prevent a "general, exploratory rummaging in a person's belongings."

*Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard,* 774 F.2d 402, 404 (10th Cir.1985).

In the case at hand, the warrant identified the location of the search as the defendant's residence, where roughly a year and half of the sexual abuse occurred, and where images of child sexual exploitation had reportedly been produced. The warrant expressly authorized the seizure of computer devices for specific evidence relating to specific crimes, set forth in Attachment B. The warrant provided clear guidance to any subsequent examiner of the devices as to the scope of the search.

The defendant relies on *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005) and *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009) for his idea that computer searches require "particularity-plus" or a second warrant separate from the residential warrant. In reality, both *Riccardi* and *Otero* demonstrate that the present single warrant was quite particular and aligns with the 10th Circuit's precedent.

In *Riccardi*, a warrant issued authorizing the seizure of Riccardi's computer and the search of all data within the device. 405 F.3d at 858. The warrant in that case was not limited to any particular files nor to any particular federal crime. *Id*. at 862. In its review, the 10th Circuit concluded "warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material." *Id*. In the present case, such affirmative limitations are in place, as reflected in Attachment B, Paragraphs 1(a)-(c) and 2(a)-(c) which relate to the federal crimes described in the affidavit. To the extent *Riccardi* clarified what is

necessary for a search warrant, the present warrant complies. Even if it didn't comply, it's clear from the language of Attachment B that the affiant attempted to comply in good faith.

In *Otero*, the warrant in that case was divided into two sections - first, items to be seized, and second, "computer items to be seized," as follows:

"ITEMS TO BE SEIZED:

1. Any and all mail matter addressed to residents of Highway Contract Route 064 in Los Lunas, New Mexico.

2. Any and all credit cards, credit card receipts and/or other records bearing names, addresses and/or credit card numbers of known victims and other residents from Highway Contract Route 064 in Los Lunas, New Mexico.

3. Any and all credit cards, credit card invoices, receipts, statements, affidavits of forgery, pre-approved offers, applications, correspondence, automatic teller machine (ATM) receipts and/or other records related to credit card or other accounts at financial institutions and/or businesses for individuals other than residents of 123 La Ladera Rd., Los Lunas, NM 87031 [Ms. Otero's address].

4. Any and all mail matter or correspondence addressed to individuals other than residents of 123 La Ladera Rd., Los Lunas, NM 87031.

5. Any and all materials including but not limited to letters, correspondence, journals, records, notes, data and computer logs bearing victim information and/or other information related to or pertaining to the theft of mail, the fraudulent credit cards, bank fraud and conspiracy including but not limited to credit card offers, receipts, credit card statements, financial statements, and financial transaction records.

COMPUTER ITEMS TO BE SEIZED

6. Any and all information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer-related equipment. This media included floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, video cassettes and other media which is capable of storing magnetic coding, as well as punch cards, and/or paper tapes and all printouts of stored data.

7. Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, cables, printers, plotters, encryption circuit boards, optical scanners, external hard drives, external tape backup drives and other

>computer-related electronic devices.
>
>8. Any and all instructions or programs stored in the form of magnetic or electronic media which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, compilers, interpreters and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio or other means of transmission.
>
>9. Any and all written or printed material which provides instructions or examples concerning the operation of the computer systems, computer software and/or any related device, and sign-on passwords, encryption codes or other information needed to access the computer system and/or software programs."

*United States v. Otero*, 563 F.3d 1127, 1129–30 (10th Cir. 2009). The 10th Circuit observed, "[e]ach paragraph under the first section takes pains to limit the search to evidence of specific crimes or evidence pertaining to specific persons along Ms. Otero's delivery route" while "[e]ach paragraph under the second section, in contrast, has no limiting instruction whatsoever." *Id.* at 1132. In comparison to the present warrant, it should be clear that the warrant took pains to limit the search to specific crimes or evidence pertaining to specific persons, as was done in the first section in *Otero*. Even if the present warrant did not meet the mark of *Otero*, it's clear from the language of Attachment B that the affiant attempted to comply in good faith.

Based on *Otero* and *Riccardi*, the Court should find the present warrant made affirmative efforts to guide the search of the computer devices. To be clear, neither *Riccardi* nor *Otero* stand for the proposition that law enforcement must specifically identify which device contains evidence of a crime before seizing and examining it. Indeed, a requirement for such prognostication would be impossible in most cases.

Instead, the law is clear: "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized. Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description

is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Leary,* 846 F.2d 592 (10th Cir.1988). In this case, the warrant described the items to be seized in terms as specific as the circumstances and the nature of the activity under investigation permitted. No more was needed, nor required. With the foregoing in mind, this Court should deny the defendant's motion relating to his particularity challenge.

**III.   Probable cause**

In determining whether a search warrant is supported by probable cause, a judge must consider whether the totality of the information presented "establishes the fair probability that contraband or other evidence of a crime will be found in a particular place." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009). Although the information presented must demonstrate a connection between the place to be searched and the items sought, "this nexus ... may be established through normal inferences about the location of evidence." *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009).

To begin his argument on this point, the defendant asserts "On its face, the affidavit does not establish probable cause to search the home based on the twin's claims of sexual abuse." To the contrary, the affidavit unequivocally and repeatedly identifies the location of the sexual abuse as being the residence of the defendant. This assertion is plainly without merit.

In this case, the affidavit detailed (to the extent necessary for probable cause, but in a degree that avoided disclosure of the more salacious aspects of the defendant's conduct) the disclosure of sexual abuse experienced by MV1 and MV2 at the defendant's residence. The affidavit detailed various places, surfaces, and tangible things involved in the abuse. For purposes of considering the defendant's challenge, it is within the context of that long-term

6

sexual abuse that the other charges arise. To be certain, the Production or Witness Tampering offenses are not crimes occurring in a vacuum, without relation to the sexual abuse. They are part of a totality of conduct. The defendant wants to necessarily wants to avoid the totality of the information, even though prevailing caselaw says otherwise. *Roach*, 582 F. 3d at 1200 (a judge must consider the totality of the information presented).

As related to the Witness Tampering, the affidavit provides the details of two known emails, for which the defendant concedes, "the tenor of the emails is angry." The affidavit explains these "angry" communications were undertaken with a fictitious account to avoid discovery by the minors' custodians. Def. Attachment B, Paragraphs 13, 16, and 21. From those facts alone, the Magistrate Judge could reasonably infer that the defendant intended to harass the minor and prevent or dissuade her from reporting him or pursuing prosecution, i.e., violations of 18 U.S.C. 1512(b)(3) and (d). Contrary to the defendant's suggestion, there is no necessity for affirmative commands, overt threats, or demands, such that the absence of such overt threat is immaterial.

However, the facts related to the Witness Tampering did not stop there. The affidavit makes clear that these "angry" communications were sent after the defendant knew the girls had disclosed his sexually abusive conduct to their mother. Def. Attachment B, Paragraphs 12, 13, and 16. The Magistrate Judge could reasonably infer the defendant's intent in maintaining contact - to keep the girls' afraid of him. Indeed, the affidavit makes clear the girls were afraid of him, because of his strength, physical size and military training. Def. Attachment B, Paragraph 18(a). The girls also reported he had used the internet to find out information about them, indicative of "stalking" or harassing behavior. Def. Attachment B, Paragraph 22. MV1 also

reported he used the fictitious account to discuss the sexual acts performed in the past, which the Magistrate Judge could reasonably infer was harassing to a victim who had reported the sexual abuse to her custodians. Def. Attachment B, Paragraph 21. Against this backdrop, the Magistrate Judge had ample facts upon which to conclude the crime of Witness Tampering had been committed, and that the defendant committed it.

In terms of connection to the residence, the defendant complains that the email was not traced to the defendant's residence via IP address[2], or to a device in the residence. This is a red herring, in that the complaint ignores the fact that the affidavit "traced" the email back to the defendant himself. Def. Attachment B, Paragraph 20. "[M]agistrate judges may draw their own reasonable conclusions, based on the Government's affidavit and the 'practical considerations of everyday life,' as to the likelihood that certain evidence will be found at a particular place. Thus, we have specifically acknowledged that 'the nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence.' Allowing such inferences to establish a Fourth Amendment nexus is appropriate because probable cause is a matter of 'probabilities and common sense conclusions, not certainties.'" *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) (internal citations omitted). The affidavit provided sufficient information upon which the Magistrate Judge could reasonably determine that the electronic device, or devices, used by the defendant to communicate with

---

[2] To the extent it matters, FBI did not obtain a search warrant for the account until July 6, 2017, several months after this search warrant. Thus, this information was not known to law enforcement at the time of the residential warrant. When FBI obtained the return from Yahoo, the information showed the account had been created on November 23, 2015 (after the girls' disclosure and removal) with a registration IP address of 12.200.194.42. That IP address matches an IP address used to access a Google Drive account belonging to the defendant, at the same time. Similarly, IP log-in information for the Yahoo account showed access from IP address 108.202.171.170, which again matched the IP log-in information for the Google Drive account belonging to the defendant. Additionally, the alternate communication information listed for the Yahoo account was a match for a cellphone number of the defendant.

MV2 would likely be found in the defendant's home, as it is commonly known that people tend to keep their communication devices near them and especially within their residences.

For his complaint against the child pornography production, the defendant asserts "the affidavit makes no mention of how a computer was connected to the claimed sexual abuse." To the contrary, in Paragraph 21, the affidavit describes the defendant creating and using a fictitious online account to communicate with MV2, to "discuss the sexual acts performed in the past with both minor victims." Additionally, in Paragraph 16, the affidavit describes the defendant told MV2, "prior to being taken to Illinois," that he would contact her via a fake email, i.e., a computer-facilitated communication. Adding in another technological aspect, in Paragraph 19, the affidavit alleged the defendant took pictures of MV1's vagina and while engaging in sex acts with her. Fair to say, the affidavit demonstrates the use of technology became intertwined with the defendant's conduct, such that evidence of *any* of the listed crimes might be located on computer devices.

For his part, the defendant proposes that molesting kids does not support a search for child pornography, extrapolating from *United States v. Edwards*, 813 F.3d 953 (10th Cir. 2015). To clarify, in *Edwards*, the 10th Circuit addressed a warrant based on purely lawful (but distasteful) conduct involving child erotica. The *Edwards* case did not involve acts of sexual abuse or production of child pornography. This type of extrapolation is unhelpful to the Court.

At least one circuit disagrees with the defendant on his central thesis. *See United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010) ("to the extent that *Hodson* and *Falso* suggest that evidence of a defendant's tendency to sexually abuse or exploit children is irrelevant to the probable cause analysis, we respectfully disagree."). As the 8th Circuit notes, "There is an

9

intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *Id*. Truer words were never said, as this Court has seen in cases like Wireman (15-CR-10012-JTM), Meisel (14-CR-10106-JTM), Rodenbeek (16-CR-10138-JTM) and others. These cases amount to "empirical" evidence indicating the *Colbert* position is reasonable and correct.

Even so, the facts in this affidavit are distinguishable from all of these cases, in that this case involves the blending of sexual abuse with production of child pornography. The facts in this affidavit involve a defendant with a long-term, manifest interest in child sexual abuse that moved well beyond molestation to rape and sodomy, and which had moved to include taking pictures of the sexual abuse. None of the cases cited by the defense addressed this cross-over, or whether that circumstance would support probable cause determination. In the context of this case, the Magistrate Judge could reasonably infer that the defendant's interest in child sexual abuse had expanded from "contact" to include "child pornography," both specific to MV1 and to child pornography generally.

Insofar as the defendant contends the "when" of the pictures would be relevant to the inquiry, the United States contends that the continuous nature of the sexual abuse, which was undertaken in combination with the production offense, makes the "when" much less relevant to the inquiry. While probable cause cannot be based on stale information, the determination of timeliness "does not depend simply on the number of days that elapsed between the facts relied on and the issuance of the warrant." *United States v. Snow*, 919 F.2d 1458, 1459–60 (10th Cir. 1990). Rather, courts must consider "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id*. at 1460. In *Snow*, the Tenth Circuit recognized

that ongoing and continuous criminal activity renders the passage of time "less critical" for purposes of staleness. *Id*. In this case, the on-going sexual abuse lasting roughly 6 years made the issue of staleness less critical. Similarly, the continued use of computer-facilitated communication, occurring as recent as just three months before the warrant, takes the wind out of any claim of "staleness."

Based on the foregoing, this Court should deny the defendant's motion challenging the probable cause determination.

## IV.     *Franks* hearing request

There is a presumption of validity with respect to the affidavit supporting the search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant is entitled to a *Franks* hearing if he "makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir.1997) (citing *Franks*, 438 U.S. at 155–56). "[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Id*. (quoting *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir.1990)) (internal quotation marks omitted). A defendant's allegations must be accompanied by an offer of proof. *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir.1989). Defendants must "point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. (quoting *Franks*, 438 U.S. at 171).

   **A. The defendant's  offer of proof is deficient**

In this case, the defendant's offer of proof is simply the transcript of an interview of MV1, as Attachment A. The Court should dispose of challenges for which the defendant has provided no affidavit (or no otherwise reliable statement of a witness) to support his claims. More specifically, the Court should summarily deny the defendant's claim of material omission relative to K.W.'s alleged disbelief of the girls' report or the alleged recantation, for which he provides no supporting affidavit or otherwise reliable statement.[3] The Court should also summarily deny the defendant's claim relative to MV2's alleged report, which is similarly absent. The Court should also deny the defendant's claim relative to Paragraph 19, because the transcript provided does not support his claim, as explained below.

### B.   Paragraph 19 accurately reflects the minor's report

The defendant's challenge to Paragraph 19 fails to identify any specific portion of Paragraph 19 that is actually false. Instead, his challenge relates to an omission. To be clear, while he lists several omissions, he only identifies one omission as material: the timing of the Production.[4] *Franks* does not extend to immaterial omissions. *See e.g., United States v. Lefkowitz,* 618 F.2d 1313, 1317 (9th Cir.), *cert. denied* 449 U.S. 824 (1980) (failure to disclose that informant was defendant's estranged wife is immaterial under *Franks* because magistrate could still have found probable cause had that information been included); *United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984), *cert. denied,* 470 U.S. 1003 (1985) (where omitted fact was of marginal value, no violation occurred under *Franks*).

---

[3] Even if the Court did consider this claim, it is doubtful that the Magistrate Judge would have considered the reasons for the mother's disbelief to be *material* to his consideration, particularly as the mother's disbelief had been recited in Paragraph 12 of the Affidavit.

[4] If the Court did consider the consider the other omissions, they are largely omissions of things which witnesses "didn't know" or "didn't believe." Again, such omissions would not be material to the Magistrate Judge's consideration.

The defendant argues "the affiant misled the magistrate as to the timeliness of the information in the affidavit regarding the claim of production of child pornography and prevented an accurate assessment of whether the information was stale." Doc. 39, p. 27. The defendant contends the omission of the timing of the production conduct misled the Magistrate Judge into thinking the production crime was on-going, because the other crime(s) were on-going. To advance his argument, the defendant repeatedly asserts Attachment A reveals only one instance of Production. To the contrary, MV1's report as contained in Defendant's Attachment A, reveals something different:

> "He took pictures of my, uhm, vagina. And whenever we first moved to Kansas, we were in the, uhm, kind of temporary housing, and we had a mirror on his bed, on the wall, behind his bed, and he would, uhm, takes pictures of us in the mirror from behind."

Def. Attachment A, pg. 39. The minor's statement suggests that there were at least two incidents of production - pictures of her vagina, *and,* at another time, the pictures of the sex acts. The defendant would be in a better position to say MV1 reported one instance if "He took pictures of my, uhm, vagina" followed "whenever we first moved to Kansas…" He appears to recognize this syntactic dilemma by purposefully rearranging the statement: "S.P. said that Mr. Smith took 5-8 photos during sex, of her vagina, one time, in February of 2014…" Doc. 39, p. 10. Where the government took pains to *recite* what the minor reported, the defendant took pains to *rewrite* what the minor reported. Thus, it is the defendant's counsel who has made an affirmative, intentional, material misrepresentation to the Court in support of a petition for a judicial action.[5]

---

[5] While the Court might consider the appropriate response to this type of advocacy is to simply reject the request for *Franks* hearing on the basis of the material misrepresentation, that approach punishes the defendant for the conduct of his counsel. However, in light of the fact that Def. Attachment A clearly differs from his factually assertion, the more appropriate response would be a determination that the claim was not accompanied by an "affidavits or sworn or otherwise reliable statements of witnesses" that says what he claims. A defendant's allegations must be accompanied by an offer of proof. *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir.1989). In this instance, he has failed to meet his predicate burden.

Assuming that the Court does not summarily reject the defendant's claim in light of his failure to provide accompanying support, the defendant fails to show that any omission in Paragraph 19 was intentional or reckless. He asserts, without proof, that the affidavit "is specifically designed to mislead the magistrate" into believing the photos were taken over a period of years. To the contrary, the affidavit intentionally tied the conduct to Kansas, which necessarily limited the conduct to a shorter period than the entire period of abuse. Similarly, he overlooks that the affidavit took care to make clear what conduct was on-going and repetitious by using words like "repeated" or "continued" in other paragraphs. Neither of those terms, or anything like those terms, are included in Paragraph 19. The separation of Paragraph 19 would suggest, *as it was intended*, that acts of production occurred at some unknown time while in Kansas. To the extent that affidavit implies more than one occasion, that is actually consistent with MV1's statement, as discussed above. And it should not go unmentioned that the *absence* of a specific date would be as relevant to the Magistrate Judge's determination, and not in a way necessarily favorable to the government. Claiming a more precise period would have bolstered MV1's report. However, a more precise time period was not then known.

Aside from the lack of intentionality or recklessness, the defendant's arguments relating to the materiality of the timing are greatly overstated. As discussed above, insofar as the defendant contends the "when" of the pictures would be relevant to the inquiry, the United States contends that the continuous nature of the sexual abuse, which was undertaken in combination with the production offense, makes the "when" much less relevant to the inquiry. While probable cause cannot be based on stale information, the determination of timeliness "does not depend simply on the number of days that elapsed between the facts relied on and the issuance of the

warrant." *United States v. Snow*, 919 F.2d 1458, 1459–60 (10th Cir. 1990). Rather, courts must consider "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id*. at 1460. In *Snow*, the Tenth Circuit recognized that ongoing and continuous criminal activity renders the passage of time "less critical" for purposes of staleness. *Id*. In this case, the on-going sexual abuse lasting roughly 6 years made the issue of staleness less critical. Similarly, the continued use of computer-facilitated communication, occurring as recent as just three months before the warrant, would suggest that the absence of the "when" (or any of the other claimed omissions) related to the child pornography production would not have influenced the Magistrate Judge in light of the totality of the defendant's conduct. Put another way, the search warrant was not based solely on Paragraph 19, but on the total accumulation of conduct therein.

In light of the continuous sexual abuse, there would still be reason to think that child pornography, regardless of when it had been produced, would have been retained for sexual pleasure, as described in Paragraph 23(a) and (c). In terms of "years of retention," this Court knows from experience that that is a reasonable inference when dealing with an individual involved in child pornography. Whether it was produced two years earlier, or last week, there's a significant probability that the defendant will have kept it. Arguably, there is an even greater probability when the defendant has been an active hands-on offender for several years. Child grow up, but pictures stay the same age.

The Court should find that the defendant's claims related to Paragraph 19 are not supported by his Attachment A, that he has failed to meet his substantial burden, that he has failed to show any omissions were intentional or reckless, and that he has failed to show that any

omissions relative to Paragraph 19 would have been material to the Magistrate Judge's review.

### C. Paragraph 18(a) accurately reflects the content and context of MV1's statement

The defendant next asserts that the affidavit relied on a "second set of distorted facts" in relation to the force used during the claimed abuse. Doc. 39, p. 12. He specifically asserts the second sentence of Paragraph 18(a) was misleading.

As a beginning point, the defendant incorrectly asserts the United States had to show force. He asserts the crime had to have "an element of force for the contact to be a crime." Doc. 39, p. 13. This is an apparent conflation of the government's burden of proof at trial, as the Indictment elected "by using force" in the charging language. Doc. 9. The indictment, however, is a different matter than the search warrant affidavit.

In the affidavit, the sexual abuse crime identified in the affidavit is 18 U.S.C. § 2241, as referenced in paragraphs 2, 4, 5(b), 6, and 29.[6] That provision includes several subsections, including (a), "By Force or Threat." Subsection (a) includes two alternative means: (1) involving force and (2) involving threats or placing that other person in fear that any other person will be subjected to death, serious bodily injury, or kidnapping. Subsection (a) includes any attempt to commit the offense. Because the affidavit included all of these, the Magistrate Judge's review related to crimes which may involve force, threats, or placing a person in fear of serious bodily injury, or just an attempt to do any of those things. In this regard, evidence of "force" was not as important, making the "pushing" allegations equally less important.

Before getting to whether the defendant has shown allegations in the second sentence of

---

6 Paragraphs 5(b) and (6) both reference § 2241(a), but neither includes the sub-subsection (1) or (2). The only reference to "force" is in Paragraph 5(b) and on the Application, both of which provide an abbreviated colloquial reference of the offense description.

Paragraph 18(a) are false or material, the Court may easily dispose of the defendant's motion. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989). While it may not carry the day at jury trial, the fact that both girls were afraid of him, referenced in the first sentence of Paragraph 18(a), would be sufficient for probable cause for "placing in fear" in the context of a probable cause determination. Paragraph 18(c) references MV1 and MV2 being forced to perform sex acts at the same time, as well as an instance of sexual bondage. Force in the form of "holding and moving her head" during oral sex is directly referenced in Paragraph 18(f), in relation to MV2. As the defendant notes, there's no question that MV1 reported being pushed by the defendant. Doc. 39, p. 12. With the foregoing in mind, if the Court excised the last part of second sentence of Paragraph 18(a) – scratching "for MV1 to perform sexual acts on him – there would still be ample evidence or force or placing the girls in fear of serious bodily injury sufficient to support the warrant's issuance.

If, however, the Court wishes to determine whether Paragraph 18(a) reflects an intentional false statement, the defendant cannot show that the inaccuracy was intentional or reckless. To start with, "pushing" was described by MV1 as part of the way in which the defendant maintained control and intimidation:

> MV1: He intimidates me.
> Interviewer: Explain that to me.
> MV1:  He's a very strong, buff man. He's, like, really tall and he's got a lot of strength on him.
> Interviewer: Okay.
> MV1: His military experience, all of that, it intimidates me.
> Interviewer: Okay. What do you think would have happened if you had told him how you felt about it?

> MV1: He would have got really mad. Uhm, there were times, like, because he thought he was my boyfriend, that I had to hide my actual boyfriends and if he found out, he became angry and violent with me. He's not done any serious harm but he's, like, pushed me and stuff like that.

Def. Attachment A, p. 12. Based on the foregoing, the content and context of MV1's report is that pushing was used to gain compliance, i.e., to get her to comply with demands for sex. To cement this interpretation, MV1 described how he would get when he would get violent with her:

> "...yell at me, kick stuff, throw stuff, not at me, but around me. And eventually, if he got really mad, he would push me. He didn't do anything ever to actually, like, leave marks or anything; but, enough to where I got the warning."

Def. Attachment A, p. 17. Again, those comments were in the context of how the defendant maintained control over MV1. Paragraph 18(a) is a reasonable and fair encapsulation of MV1's longer report. Because MV1 did report pushing as part of the defendant's way of maintaining control, the defendant cannot show Paragraph 18(a) is intentionally or recklessly false.

The only way one gets to where the pushing is *not* in relation to sexual control is to divorce the above comments from the interview (relating to the sexual abuse) and the lines of questioning. As the defendant puts it, "[t]his isn't a case of just negligently selecting the best facts for an affidavit." Doc. 39, p. 11. Here, it is the defendant who affirmatively attempts to remove necessary context and content from MV1's report. As before, the supporting document provided by the defendant does not actually support his claim, and the Court may find his motion deficient in that regard as well.

### D. The omissions relating to the Defendant's phone are plainly immaterial

The defendant also asserts that SA Popst omitted all of the evidence that the defendant did not have illegal images on his phone, or that he had an interest in adult females. While absolutely omitted, none of these omissions would have been remotely material to the Magistrate

Judge's consideration. As to the first omission, MV1 demonstrated a lack of knowledge as to whether he had illegal images on his phone, such that her merely conclusory belief would not have affected the Magistrate Judge's consideration. As to the second omission, whether or not the defendant had an interest in adult women would not have precluded an interest in children. Neither of these omissions were material. Likewise, their omission does not reflect anything remotely resembling an intent to mislead the Magistrate Judge. Allegations of negligence or innocent mistake are insufficient. *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989).

## CONCLUSION

For the foregoing reasons, the United States requests the Court deny the defendant's motion to suppress, based on the four corners review of the warrant. Similarly, the United States requests the Court deny the defendant's motion for a Franks hearing. The United States specifically requests the Court find the defendant failed to supply the requisite documentation in support of his claims for Franks hearing, in that the single supporting document (Def. Attachment A) demonstrably contradicted the defendant's allegations or supported the government's affidavit.

    Respectfully submitted,
    THOMAS E. BEALL
    United States Attorney

    s/Jason W. Hart
    JASON W. HART, #20276
    Assistant U.S. Attorney
    1200 Epic Center, 301 N. Main
    Wichita, Kansas 67202
    Telephone: (316) 269-6481
    Fax: (316) 269-6484
    E-mail: jason.hart2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2017, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David Freund & Jennifer Amyx
Attorneys for Defendant

                                                                   s/Jason W. Hart
                                                                   JASON W. HART, #20276
                                                                   Assistant United States Attorney